632 So.2d 1198 (1994)
Darnell WHITE, Plaintiff-Appellant,
v.
WILLIS-KNIGHTON MEDICAL CENTER, et al., Defendants-Appellees.
No. 25575-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
Rehearing Denied March 24, 1994.
Patricia N. Miramon, Shreveport, for appellant.
Mayer, Smith & Roberts by Paul R. Mayer, Jr., Shreveport, for appellee, George Carstens, M.D.
Watson, Blanche, Wilson & Posner by Michael M. Remson, Baton Rouge, for appellee, Willis Knighton Medical Center.
Before LINDSAY, VICTORY and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff, Darnell White, appeals a judgment sustaining the defendants' peremptory exception of prescription and dismissing her medical malpractice suit. We affirm.

FACTS
On September 23, 1989, plaintiff went to the Willis-Knighton Medical Center emergency room complaining of an injury to the fourth finger of her left hand. After x-rays and an initial examination, Dr. Carstens applied a splint and bandage to plaintiff's finger. He instructed the plaintiff to soak or place ice on her finger to alleviate the swelling and to remove the splint after three or four days. After this initial treatment, Dr. Carstens released the plaintiff from his care.
Plaintiff subsequently hit her previously injured finger on a car door. She went to the Willis-Knighton South emergency room on October 30, 1989. The emergency room physician consulted with Dr. Marion Milstead, an orthopedist. Dr. Milstead informed plaintiff that her finger was broken. After he made several unsuccessful attempts to *1199 reset the bone into the joint, Dr. Milstead informed the plaintiff that he suspected the fracture was six weeks old. He asked plaintiff to return on November 1, 1989 after he had reviewed the x-rays that were taken after her initial injury of September 23, 1989.
On November 1, 1989, Dr. Milstead confirmed plaintiff had an old fracture and that scar tissue had formed in the fracture line, which made it difficult to reset the bone into the joint. He discussed with the plaintiff the complications she could expect in the future, including the eventual development of osteoarthritis, and gave her two options for treatment: fuse the joint of the finger or attempt open reduction surgery.
Plaintiff successfully underwent surgery to reset the bone on November 7, 1989. However, she returned to Dr. Milstead on May 23, 1990 again complaining of pain in her finger. Dr. Milstead then diagnosed plaintiff's condition as traumatically induced osteoarthritis.
Plaintiff filed this medical malpractice claim with the Louisiana Patients' Compensation Board on January 24, 1991. In its judgment sustaining the defendant's peremptory exception of prescription, the trial court concluded that plaintiff had sufficient knowledge of her potential claim against the defendants prior to one year from the date she filed suit. Plaintiff appeals.

DISCUSSION
The one-year prescriptive period of LSA-R.S. 9:5628 commences on the date of the alleged misconduct.[1] When it appears on the face of the petition that prescription has accrued, the plaintiff must allege and prove facts indicating that the injury and its causal relationship to the alleged misconduct were not apparent or discoverable until within the year before the suit was filed. Percy E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App.2d Cir.1985).
Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Abrams v. Herbert, 590 So.2d 1291 (La.App. 1st Cir.1991); Percy, supra. When a party has sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry, he or she has the constructive knowledge necessary to start the running of prescription. Tilley v. Kennedy, 605 So.2d 226 (La.App. 2d Cir.1992).
Plaintiff filed her medical malpractice claim on January 24, 1991 complaining of improper treatment and care by Dr. Carstens on September 23, 1989. Thus, plaintiff's claim has prescribed on the face of her petition.
A review of the record reveals that plaintiff knew she was possibly a victim of a tort. Plaintiff continued to experience pain after she was treated by Dr. Carstens. She testified during her deposition that her family had to assist her because she was unable to use her hand. According to the plaintiff, in October 1989, after she hit her hand on the car door, her mother questioned the length of time she had been suffering with her hand and instructed her to seek additional medical treatment.
Granted, the mere apprehension that something is wrong will not commence the running of prescription. Baum v. Cato, 599 So.2d 909 (La.App. 4th Cir.1992). Here, however, plaintiff also testified that Dr. Milstead indicated Dr. Carstens had done something wrong. Plaintiff stated the following colloquy took place between her cousin, Sheila Nichols, and Dr. Milstead while he was examining plaintiff prior to her November 7, 1989 surgery:
Q. Okay. Did he ever tell you that the first doctor did anything wrong?
A.... My cousin asked him. She said, "Why didn't they do what you did? Why didn't they do what other doctor did? Why didn't they call somebody in if they wasn't [sic] sure?" He said, "I don't *1200 know," just like that. So my cousin said, "Well, don't you think that's negligence on their part?" And he said, "yes."
Plaintiff's testimony reveals she became aware of the alleged medical malpractice as early as the first week of November 1989. Therefore, the trial court was not clearly wrong in finding that prescription had accrued before plaintiff filed her medical malpractice action.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before LINDSAY, VICTORY, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] LSA-R.S. 9:5628 in effect at the time of the alleged act provided in pertinent part:

A. No action for damages for injury or death against any physician ... shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect....