STEWART, J.
 

 | ,The trial court granted an exception of prescription filed by the defendant doctors in response to the initiation of medical review panel proceedings by the heirs of the decedent, Bobbie Jackson. Finding that the complaint is prescribed on its face and that the plaintiffs failed to prove that their action had not prescribed, we affirm.
 

 FACTS
 

 The plaintiffs, identified as the “Heirs of Bobbie Jackson,” filed a complaint on March 19, 2008, to initiate medical review panel (“MRP”) proceedings against the defendants, Dr. Richard M. O’Donovan, Dr. Michael R, Hand, and Dr. Walter M. Sartor concerning their treatment of Ms. Jackson and their alleged failure to diagnose an abdominal mass as cancer. The complaint identifies the heirs as “persons of full age and majority,” but does not explain their relationship to the deceased.
 

 The complaint alleges that Dr. O’Donovan treated Ms. Jackson in June 2006, when she exhibited symptoms of weight loss, poor appetite, vomiting, and abdominal pain. Tests done on June 13, 2006, revealed a mass in Ms. Jackson’s right lower abdomen, but Dr. O’Donovan did not investigate or examine the mass. Rather, on June 15, 2006, he diagnosed the mass as an asymptomatic fibroid.
 

 Still having abdominal complaints, Ms. Jackson was admitted to St. Francis North Hospital under Dr. Hand’s care on July 12, 2006. He diagnosed a gallbladder problem. On August 22, 2006, Dr. Sartor performed gallbladder removal surgery on Ms. Jackson. Although she was l2still complaining of abdominal pain upon discharge from the hospital, Dr. Sartor did not investigate its cause.
 

 The complaint further alleges that Ms. Jackson was again admitted to the hospital on September 30, 2006, at which time another physician, who is not involved in this matter, diagnosed the abdominal mass as cancer. Ms. Jackson subsequently died on February 5, 2007. According to the complaint, the death certificate issued on
 
 *437
 
 March 21, 2007, identified the cause of death as sarcoma with metastasis.
 

 The defendants responded to the MRP complaint by filing an exception of prescription in the district court. They argued that the plaintiffs’ complaint, which was filed more than one year after the date of Ms. Jackson’s death, was prescribed on its face. Therefore, they asserted that dismissal of the complaint was warranted unless the plaintiffs proved that it was not untimely.
 

 In response, the plaintiffs offered the affidavit of Catina Jackson-Robinson, identified as an heir of Bobbie Jackson. The affidavit states that Ms. Jackson died at home and that her family was not advised of the cause of death until the death certificate was issued on March 21, 2007. According to the affidavit, the death certificate listed sarcoma cancer as the cause of Ms. Jackson’s death, thereby prompting the family to inquire into her medical records, which revealed the alleged malpractice by the defendants.
 

 The exception was heard by the trial court on September 12, 2008. The minutes indicate that the parties declined to have the proceedings | ^recorded, thus there is no transcript to review. Upon taking the matter under advisement, the trial court rendered a judgment on October 12, 2008, dismissing the plaintiffs’ claim as prescribed. The trial court determined that any damage resulting from the alleged malpractice was apparent on February 5, 2007, the date of Ms. Jackson’s death. Prescription began to run on the date of death, and not on the date of the death certificate as contended by plaintiffs.
 

 The plaintiffs’ appeal followed.
 

 APPLICABLE LAW
 

 Prescription is a peremptory exception that must be specially pleaded. La. C.C.P. art. 927(B). The party pleading prescription ordinarily bears the burden of proof; however, if prescription is evident on the face of the plaintiffs pleadings, then the burden shifts to the plaintiff to show that the matter has not prescribed. Carter
 
 v. Haygood,
 
 2004-0646, p. 8-9 (La.1/19/05), 892 So.2d 1261, 1267;
 
 Campo v. Correa,
 
 2001-2707, p. 7 (La.6/21/07), 828 So.2d 502, 508. Prescriptive statutes are to be strictly construed so as to favor the obligation sought to be extinguished.
 
 Carter v. Haygood,
 
 2004-0646, p. 10, 892 So.2d at 1268.
 

 The prescriptive period for medical malpractice actions is set forth in La. R.S. 9:5628(A), which states:
 

 A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect; however, Reven as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
 

 A health care provider against whom MRP proceedings have been initiated may raise an exception of prescription in a court of competent jurisdiction and proper venue before completion of the MRP process. La. R.S. 40:1299.47;
 
 Dixon v. Louisiana State University Medical Center,
 
 33,036, p. 4 (La.App. 2d Cir.1/26/00), 750 So.2d 408, 411-412,
 
 unit denied,
 
 2000-0627 (La.4/20/00), 760 So.2d 350.
 

 
 *438
 
 La. R.S. 9:5628(A) provides two periods for filing a malpractice action — either one year from the date of the alleged act, omission, or neglect, or one year from the date of discovery so long as no more than three years have elapsed from the date of the alleged act, omission, or neglect.
 
 Campo v. Correa,
 
 2001-2707, p. 9, 828 So.2d at 509. The first period applies when the damages are immediately apparent upon the commission of the alleged malpractice, whereas the second period is a codification of the fourth category of
 
 contra non valentem
 
 that occurs where the cause of action is not known or reasonably knowable by the plaintiff and when the damages are not immediately apparent upon commission of the alleged malpractice.
 
 Carter v. Haygood,
 
 2004-0646, p. 11, 892 So.2d at 1268.
 

 Considering the two prescriptive periods provided by La. R.S. 9:5628, a petition alleging medical malpractice is not prescribed on its face if it is brought within one year of the date of the discovery so long as there are facts alleged with particularity to show that the plaintiff was unaware of the malpractice before the date of discovery and that the delay in filing suit |6was not due to some willful, negligent, or unreasonable action by the plaintiff.
 
 Campo v. Correa,
 
 2001-2707, p. 9, 828 So.2d at 509.
 

 In
 
 Taylor v. Giddens,
 
 618 So.2d 834 (La.1993), the supreme court clarified the applicability of La. R.S. 9:5628 to survival actions and wrongful death actions. The court determined that La. R.S. 9:5628 applies to the survival action, which comes into existence at the time of the tortious conduct and is derivative of the malpractice victim’s action.
 
 Id.,
 
 at 840. The survival action, which allows the recovery of damages suffered by the victim from the time of injury until death, is dependent upon the victim having a viable malpractice claim at the time of death.
 
 Id.
 
 However, the wrongful death action, which compensates the victim’s family for their own injuries resulting from the victim’s death, arises when the victim dies and not at the moment of the alleged malpractice.
 
 Id.
 
 The wrongful death action is not derivative of the malpractice victim’s action and is not subject to the prescriptive periods of La. R.S. 9:5628. Rather, the wrongful death action is governed by the one-year period under La. C.C. art. 3492 applicable to delictual actions and begins running on the date of the malpractice victim’s death.
 
 Id.,
 
 at 841. In
 
 Taylor, supra,
 
 the wrongful death action filed within one year of the malpractice victim’s death was timely, but the survival action filed more than three and one-half years after the tortious act was prescribed.
 

 DISCUSSION
 

 With the aforementioned principles in mind, we must determine whether the complaint initiating MRP proceedings filed on March 19, 2008,16is prescribed. To the extent that the plaintiffs seek damages for wrongful death, their claim is prescribed due to the fact that it was filed more than one year after the date of Ms. Jackson’s death, which occurred on February 5, 2007.
 

 Seeking reversal of the trial court’s judgment, the plaintiffs argue that the survival action aspect of their malpractice claim is not prescribed. They contend that the complaint initiating MRP proceedings was timely filed within one year of the date of discovery of the malpractice and certainly within the three-year limit
 
 of
 
 La. R.S. 9:5628. The date of discovery occurred, according to plaintiffs, on March 21, 2007, when the death certificate identifying the cause of death as sarcoma with metastasis was issued. Upon learning that Ms. Jackson had died from cancer, her
 
 *439
 
 heirs were prompted to examine her medical records, which revealed the defendants’ alleged failure to diagnose Ms. Jackson with cancer.
 

 As stated, a medical malpractice action brought within one year of the date of discovery is not prescribed on its face so long as the petition alleges facts with particularity to show that the plaintiff was unaware of the malpractice before the alleged date of discovery and that the delay in filing was not due to the plaintiffs willfulness, negligence, or unreasonableness.
 
 Campo v. Correa,
 
 2001-2707, p. 9, 828 So.2d at 509. For prescription to begin, a plaintiff need only have constructive knowledge of facts that would indicate to a reasonable person that he or she was a tort victim.
 
 Campo v. Correa,
 
 2001-2707, p. 11-12, 828 So.2d at 510. This means notice of sufficient facts to excite attention and call for inquiry.
 
 Id.
 
 There is no 17requirement that the plaintiff or injured party must be informed of possible malpractice by an attorney or medical practitioner before prescription begins to run.
 
 Abbott v. Louisiana State University Medical Center-Shreveport,
 
 35,693, p. 6 (La. App. 2d Cir.2/27/02), 811 So.2d 1107, 1111,
 
 writ denied,
 
 2002-0952 (La.5/31/02), 817 So.2d 104.
 

 The petition in this matter is the complaint initiating the MRP proceedings filed on March 19, 2008. Contrary to the plaintiffs’ claim that they did not discover the alleged malpractice until the issuance of the death certificate prompted inquiry, the allegations set forth in their complaint point to the date of discovery as September 30, 2006, when a cancer “work up” was done on Ms. Jackson and the abdominal mass was found to be a “sarcomatous degeneration.” At this point, it was apparent that the defendants may have failed to properly diagnose Ms. Jackson’s complaints about abdominal pain and the etiology of the abdominal mass previously revealed in a CT scan on June 13, 2006. The diagnosis of cancer made on or immediately after September 30, 2006, would excite the attention of a reasonable person and call for an inquiry about possible malpractice by the defendants who had previously treated Ms. Jackson for abdominal complaints. Upon Ms. Jackson’s death on February 5, 2007, her viable malpractice claim was transmitted to her heirs who then had to file their survival claim within one year of her death and within three years of the date of the tortious conduct.
 

 Based on the allegations made in the complaint, the plaintiffs’ survival action/malpractice claim is prescribed on its face, as asserted by |8the defendants in exception of prescription. The burden then shifted to the plaintiffs to show that the matter had not prescribed. To meet the burden of proving their claim had not prescribed, the plaintiffs offered the affidavit of Catina Jackson-Robinson. The affidavit, which simply alleges that the heirs were unaware of the cause of death and potential malpractice until the death certificate prompted them to inquire into Ms. Jackson’s medical records, does not alone suffice to show that the claim had not prescribed. If so, any plaintiff could easily defeat an exception of prescription by claiming he did not know.
 

 The date that the malpractice occurred, or the date the deceased knew or should have known of the malpractice, is the date prescription began to run. According to the complaint, the abdominal mass was diagnosed as some type of cancer as early as September 30, 2006, at which time the facts suggesting the existence of a potential malpractice claim were apparent and discoverable. It was incumbent upon the plaintiffs to explain whether or not Ms. Jackson was aware of her condition and the actionable malpractice claim. If Ms.
 
 *440
 
 Jackson did not know and should not have known that she had an actionable malpractice claim, then plaintiffs had to explain why they did not learn of Ms. Jackson’s condition and actionable malpractice claim prior to the issuance of the death certifí-cate. Though the plaintiffs’ complaint suggests that Ms. Jackson should have been aware of her actionable malpractice claim by September 30, 2006, when she was diagnosed with cancer, plaintiffs offered nothing to show that Ms. Jackson had no knowledge of her claim or to explain what knowledge, if any, they had |9about her medical condition and treatment in the months prior to her death. Not even the death certificate was included in the record. We find that the bare allegation that they did not know about the malpractice until after the death certificate was issued does not suffice to show that the plaintiffs’ survival action is not prescribed.
 

 Although La. C.C.P. art. 934 allows for amendment of the petition when the grounds of the peremptory objection may be removed by amendment, we do not find this article applicable to allow plaintiffs to plead facts supporting their claim of late discovery of actionable malpractice. Such facts should have been established by plaintiffs as part of their burden of proof before the trial court on the exception of prescription.
 
 See Holmes v. LSU/E.A. Conway Medical Center,
 
 43,662 (La. App.2d Cir.10/22/08), 997 So.2d 605
 
 and Dixon v. LSU Medical Center, supra.
 

 CONCLUSION
 

 For the reasons explained, we affirm the trial court’s judgment. Costs of appeal are assessed against the plaintiffs.
 

 AFFIRMED.